## JOHN H. TULLIS *et al.* v. SAMUEL McCALL.
### No. 74.

1. SALE OF PERSONAL PROPERTY—*Attaching Creditors.* One claiming ownership of property, as against attaching creditors of a former owner, there being no actual change of possession, must prove not only an actual sale and transfer of the property to him, but, also, that it was made in good faith and upon sufficient consideration.

2. ——— *Evidence Insufficient.* The evidence in this case examined, and *held* not to be sufficient to show an intention on the part of the former owner to part with the absolute title to the property attached.

MEMORANDUM.—Error from Ellsworth district court; W. G. EASTLAND, judge. Action for an alleged conversion of wheat by Samuel McCall against John H. Tullis and others. Judgment for plaintiff. Defendants bring the case to this court. Reversed. The opinion herein, filed February 14, 1896, states the material facts.

*H. Aylmer Coates*, for plaintiffs in error.

*Ira E. Lloyd*, for defendant in error.

The opinion of the court was delivered by

GARVER, J.: The controversy in this case is over the ownership of some wheat attached by the sheriff of Ellsworth county as the property of Robert McCall. Samuel McCall, defendant in error, claiming ownership by purchase from Robert McCall, his father, instituted this action against the sheriff for its conversion. Verdict and judgment were rendered in favor of Samuel McCall.

The land upon which the wheat was grown was owned by Robert McCall, a resident of Oklahoma, the premises being occupied by a tenant who farmed the

35—2 APP.

same for a share of the crop. Plaintiff relied upon a letter from his father as evidence of his purchase and ownership. Upon the trial, it was claimed that this letter had been mislaid or lost; and after the plaintiff testified concerning its receipt and his fruitless search for it, he was permitted to testify to its contents. It is argued at great length by counsel for plaintiff in error that the plaintiff was not a competent witness to testify upon these matters, and also that a sufficient showing was not made of the loss of the instrument to permit the introduction of secondary evidence of its contents. No legal reason is suggested, nor do we know of any, why a party to an action should be disqualified as a witness upon such matters. The statute itself answers the objection : ''No person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the same, as a party or otherwise. . . .'' (Gen. Stat. 1889, ¶ 4414.) No exception is made by the statute, and the plaintiff was as competent to testify to the loss of the letter and to its contents as to any other fact in the case—subject, of course, to his interest in the case being considered for the purpose of affecting his credibility. The evidence as to the search made for the letter was sufficient to justify the court in admitting secondary evidence of its contents. When asked to state what the letter contained, the plaintiff said :

''As near as I can recollect it, I was to have the wheat. There was a mortgage on the wheat of $60 or $65, and I was to pay off that mortgage, and have my money out of what was left.''

There is no other evidence in the case concerning the transaction between father and son which aids in the interpretation of the letter. The evidence shows

that at the time it was written, about June 1, 1889, the wheat then being a growing crop, Robert McCall was indebted to his son in the sum of about $178, and that there was a chattel mortgage upon the landlord's share of the wheat to a bank in the city of Ellsworth for $60 or $65. The value of the wheat remaining after the payment of the chattel mortgage was about $227. All communications between the plaintiff and his father concerning the wheat were by mail. What this correspondence was, except as to the one letter offered in evidence, does not appear. In fact, so far as there is any showing of a sale and transfer of the wheat, this letter stands isolated and alone. There is nothing in the surrounding circumstances, so far as shown, to enable one, with any degree of certainty, to determine the intention of the writer of the letter. The wheat, at the time the letter was written and up to the time when it was attached by the sheriff, remained in the exclusive possession of the tenant; no actual possession had been taken by Samuel McCall, nor any act of ownership exercised by him. Under such circumstances, as against an attaching creditor, the sale of the wheat is deemed to be void, unless it is affirmatively shown to have been made in good faith and upon sufficient consideration. (Gen. Stat. 1889, ¶ 3163.) It devolved upon the plaintiff to show, not merely the fact of the sale, but also that it was a sale made in good faith and supported by sufficient consideration. When we turn to the letter, the contents of which were presented to the court in such an unsatisfactory way, the transaction is shrouded in doubt. The testimony of the plaintiff was, at best, only his conclusion as to the meaning of the letter; it hardly pretended to be a statement of the substance of the contents. His answer, however, was allowed to stand

without objection, and now must be considered as a substantial statement of what the letter contained. Accepting it thus, how does the matter stand? Nothing is said about a sale or transfer of the wheat; nothing as to the effect the transaction should have upon the indebtedness existing between the parties; nor is there anything to indicate what may have been the writer's understanding as to those matters. The inquiry arises: For what purpose was Samuel McCall to have the wheat? Was it to be in the nature of a purchase or mortgage, or was it intended that he should only act as agent for Robert McCall to dispose of the wheat and out of the proceeds to pay the liabilities referred to? If there had not been sufficient wheat to pay both the mortgage and indebtedness to Samuel McCall, was Robert McCall to be released from any further liability on account thereof? Or, if there should be a surplus, as was the case, after paying these liabilities, who was entitled to receive it? The evidence leaves the answers to these several questions to mere conjecture and unfounded supposition. Before it can be said that there was a sale, it must appear that there was mutual consent to giving such effect to the transaction between the parties to it. If we turn to the record, the only other evidence materially bearing upon the transaction is contained in the following testimony given by the plaintiff:

"Ques. Was there any transfer from your father to you of any nature with reference to his interest in the wheat? Ans. Yes, sir.

"Q. Was that by writing or by word of mouth? A. Writing.

"Q. Did you ever show it to any one? A. Yes, sir, to you (referring to his attorney, Mr. Lloyd) and Aaron Alderson. . . .

"Q. Where was it written? A. In Oklahoma.

"Q. How did you receive it? A. By mail.

"Q. Had you written for it? A. I had. . . .

"Q. Was you expecting it? A. I was; I wrote twice for it."

It is very evident that the foregoing questions and answers furnish no aid whatever in construing the contents of the letter. Suppose a similar letter had been written to the tenant directing him to sell the wheat, first to pay the mortgage to the bank, and then to pay Samuel McCall out of what was left, what interest would the tenant have acquired? Certainly it would not have transferred the ownership to him as against attaching creditors. If it could be said that the letter was virtually a mortgage, the plaintiff would be in no better position, for the reason that it was not filed with the register of deeds of the county nor possession of the property taken. In any view we take of this letter, we are forced to the conclusion that it is not reasonable to base upon it alone a presumption that Robert McCall intended to make an absolute sale and transfer of the wheat. There being no dispute concerning the contents of the letter, and the meaning not being affected by surrounding circumstances, its proper construction was for the court, and not the jury. In many cases the facts and circumstances surrounding a transaction have an important bearing in determining the intention of the parties. But the language of this letter must speak for itself, and an effect cannot be given to it which the words used do not justify.

Some complaint is made by the plaintiffs in error because they were not permitted to show upon the trial that the premises upon which the wheat was grown were sold, pursuant to a judgment of foreclosure of a mortgage thereon, to the plaintiff in the

attachment proceedings before the wheat was cut. We find no error in the ruling of the court in this respect. The evidence shows that the crop was matured at the time of the sale, and, under the authority of *National Bank v. Beegle*, 52 Kan. 709, it did not pass with the land. It would seem, also, that the plaintiff in attachment did not regard it as so passing, for the reason that he subsequently attached it as the property of the judgment debtor, and the defendants below justified their taking by reason of such attachment.

Because there was an entire failure on the part of the plaintiff below to show a sale and transfer of the wheat by Robert McCall to him in good faith, the judgment is reversed, and the case remanded for a new trial.

All the Judges concurring.